UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUCETTS

| | |
|---|---|
| **REMEDIOS EVANS,**<br>      **Plaintiff,**<br><br>            v.<br><br>**REGIS COLLEGE,**<br>      **Defendant.** | **Civil Action No. _____** |

**COMPLAINT AND JURY DEMAND**

**INTRODUCTION**

Plaintiff, Remedios Evans ("Ms. Evans"), is an Asian/Pacific Islander and military veteran with attention deficit hyperactivity disorder ("ADHD/ADD") and Post-Traumatic Stress Disorder ("PTSD"), the latter arising out of her service.  Ms. Evans dreamed of becoming a Nurse Practitioner to serve the health care/medical needs of her fellow disabled United States military veterans.  Despite a high disability rating from the Department of Veterans Affairs ("VA") and speaking English as a second language, she maintained a 3.967 Grade Point Average in the online graduate Nursing program at the Defendant, Regis College ("Regis").  She chose Regis because of the reputation of its online graduate Nursing program, and, as a devout and practicing Christian, based on its adherence to Catholic spiritual and intellectual teachings.

Regis expelled Ms. Evans from the program on August 29, 2022, accusing her of academic dishonesty.  These accusations were false. Regis' Artificial Intelligence ("AI")-based

exam proctoring system did not take Ms. Evan's accommodations into account and erroneously reported that Ms. Evans cheated on an exam.   Rather than correct the error, Regis expelled Ms. Evans.  Regis ripped her dream away from her and forced her to incur additional expense to finish her degree elsewhere because of her disability, race, national origin and complaints to Regis about her experience of discrimination.  Because of Regis' actions, Ms. Evans brings claims against it under §504 of the Rehabilitation Act of 1973, Title III of the Americans with Disabilities Act, Section 1981 of the Civil Rights Act of 1866, and common law.

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over Ms. Evans' claims under §504 of the Rehabilitation Act of 1973, 29 U.S.C.A. §794; Section 1981 of the Civil Rights Act of 1866, 42 U.S.C.A. §1981; and under the Americans with Disabilities Act, 42 U.S.C.A. §12101, *et seq*. ("ADA").

2. This Court has jurisdiction of Ms. Evans' state law claims under 28 U.S.C.A. §1367.

## PARTIES

3. The Plaintiff, Ms. Evans, is a resident of the State of Colorado.  She was a student in Regis' graduate online nursing program from 2019 through 2022.  At all times during her attendance, she was a person protected by the Rehabilitation Act, Title III of the ADA, and the Civil Rights Act of 1866.

4. The Defendant, Regis, is a private educational institution located at 235 Wellesley Street, Weston, Massachusetts 02439, that is a recipient of federal funds. Regis is covered by the Rehabilitation Act; ADA Title III  (Public Accommodations and Services), 42 U.S.C.A. 12181, *et seq.*, and specifically, Regis is a place of public accommodation pursuant to 42

U.S.C.A. §12181(7)(J). Regis' contracted with Ms. Evans to attend and participate in the Nursing Program. That contract is covered by the Civil Rights Act of 1866, 42 U.S.C.A. §1981(a)-(b), guaranteeing a person's equal right to make and enforce contracts without regard to race, including the right to enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

## FACTS COMMON TO ALL COUNTS

5. Ms. Evans enrolled at Regis as an online graduate Nursing student in Fall 2019. She dreamed of becoming a Nurse Practitioner because she aspired to serve the medical needs of her fellow disabled United States military veterans.

6. She chose Regis because of the quality of its online graduate Nursing program, and as a devout and practicing Christian, based on its adherence to Catholic spiritual and intellectual teachings.

7. Ms. Evans is an Asian/Pacific Island American, and English is her second language. She has attention deficit hyperactivity disorder ("ADHD/ADD") and Post-Traumatic Stress Disorder ("PTSD"). Although her disabilities are severe, she is able to participate in academic programs, master the subject matter, and obtain a degree, as long as she is provided with necessary accommodations.

8. Ms. Evans maintained a 3.967 Grade Point Average ("GPA") at the start of the fall 2021 semester.

9. Regis' Nursing Program has two components: teacher-centered lectures/lessons; and actual service delivery in a clinical setting. Ms. Evans accessed the teacher-centered lectures/lessons on her computer at her own home, located in Colorado Springs, Colorado,

and she fulfilled the clinical components onsite at the PFC Floyd K. Lindstrom Department of Veterans Affairs Clinic, also located in Colorado Springs, Colorado ("VA Clinic").

10. The Regis College School of Nursing & Health Sciences Handbook ("Nursing School Handbook"), the Regis College Student Handbook, and published Regis policies apply to students enrolled in its graduate nursing program.

11. One Regis published policy is "Inclusive Excellence," in which Regis promises to protect students and not discriminate against students, including on the bases of ethnicity, race, nationality, "(dis)ability", language, personality, communication style, work style, and veteran status.

12. Regis promises to promptly and thoroughly investigate harassment/discrimination complaints, and alleviate any such harassment/discrimination.

13. Due to her disabilities, Ms. Evans needed accommodations for taking tests. She applied for and was granted, testing accommodations, from the Regis Office of Student Accessibility Services for every semester she participated in the program.

14. Ms. Evans' accommodations for her Fall 2021 courses were: an hour and thirty minutes of extended time on examinations, quizzes, and any other graded, timed assessment, and access to one sheet of scrap paper during examinations.

15. As an online student, Regis required Ms. Evans to install an AI software proctoring program ("Respondus Lockdown") in her computer. At the start of each examination, Ms. Evans performed an "environment video" scan of her testing area. To do the scan, she rotates the computer to give the software a three hundred sixty degree view of her testing environment, including floor, front and behind workspace.

16. Respondus Lockdown scrutinizes, records, and scans students' body and eye movements and the testing room environment during online testing. Respondus Lockdown generates "flags" when its AI algorithm detects body movements deemed consistent with academic dishonesty.

17. As part of her accommodation to use a piece of scrap paper, Ms. Evans was required to show both sides of the scrap paper to the video camera, before and after exams. She did so before taking each examination she took at Regis.

18. Regis knows that Respondus Lockdown can misread the movements of students who have Ms. Evans' sort of disability accommodations.

19. Ms. Evans was erroneously "flagged" by Respondus Lockdown early in her Regis career because the AI flagged her for cheating when she looked down to read the scratch paper. When she turned it over to read the other side, the AI erroneously concluded that she used multiple sheets of scratch paper instead of the one authorized sheet.

20. Regis has no safeguards on Respondus Lockdown to prevent erroneous flagging of the gestures and eye movements that are because of Ms. Evans' disability. Rather, they are individually considered on a case-by-case basis. In the initial instance, once her accommodations were brought to Regis' attention, the matter was subsequently dropped.

21. Allowing the AI to falsely flag behavior based on accommodations or disability conditions as cheating discriminates against students like Ms. Evans based on their disability because it subjects them to scrutiny from administrators and faculty that students without disabilities do not have. It also leaves open the potential for individuals with discriminatory animus to discriminate against students with disabilities.

22. In the fall of 2021, this is exactly what happened to Ms. Evans. Professor Kathleen Michel ("Professor Michel"), who is Caucasian, teaches the Regis course of *Primary Care of Family I* (NU-664B-03). Ms. Evans took this course in the fall of 2021.

23. Professor Michel knew of Ms. Evans' need for testing accommodations.

24. Professor Michel's immediate supervisor is Professor Marlo Robinson, n/k/a Marlo Schaeffer, who is also Caucasian.

25. Non-disabled students were only required to scan scratch paper once, as expressly indicated in Regis' published protocols, prior to the start of the online test; whereas Ms. Evans was required to scan her paper twice, both before and upon completion of the online examination.

26. During a critical online test session on October 31, 2021, Ms. Evans encountered technical barriers in accessing the online testing materials, in part due to Professor Michel previously providing Ms. Evans with an incorrect testing access password that prevented Ms. Evans from accessing the online test.

27. Despite the resulting delay, Ms. Evans was ultimately able to access the online test and complete it.

28. Professor Michel changed Ms. Evans' grade on the test from an 87% to a 0%, and falsely claimed that Ms. Evans committed multiple violations of academic integrity based on the false "flags" generated by the AI video surveillance.

29. Regis, despite knowing that she had accommodations and knowing that Respondus Lockdown had falsely accused her in the past, did not allow Ms. Evans to timely view the video or respond to the accusations in an informed or effective manner.

30. Instead, Professor Michel was overtly hostile towards Ms. Evans.

31. Ms. Evans initially appealed Professor Michel's actions to Professor Marlo Robinson.

32. On December 9, 2021, Ms. Evans requested that Dr. Cassandra Godzik ("Dr. Godzik"), the Associate Dean of the Regis Graduate Online Nursing program, transfer her to a different professor, because of the Professor Michel's hostility towards Ms. Evans. Dr. Godzik is also Caucasian.

33. Dr. Godzik denied Ms. Evans' transfer request.

34. Remaining in a class with Professor Michel who was hostile to her created a hostile educational climate for Ms. Evans. As a result, she was unable to concentrate on her academics and unable to fully participate in Regis' program.

35. On December 13, 2021, Ms. Evans complained to Dr. Godzik that Professor Michel was creating a hostile academic environment because of her accommodations and because Professor Michel had given her an unwarranted zero credit course grade.

36. Ms. Evans' complaints of harassment and discrimination were ignored. Regis did not conduct any investigation despite its own policies requiring such investigation. Regis' choice not to investigate discriminated against Ms. Evans because of her disability and/or her race and national origin.

37. Instead, Professor Michel and her supervisor Professor Robinson subsequently retaliated against Ms. Evans.

38. On or about December 13, 2021, Professor Robinson denied Ms. Evan's initial appeal in scathing and condescending language. She falsely accused Ms. Evans, as "lacking appropriate tone and respect." Ms. Evans' first language is not English, making it challenging for her to write consistent with the American expectations for demonstrations of respect. Accusations about tone and respect in the written word are thus discrimination because of Ms. Evans' national origin.

39. Professor Robinson treats students who do not share Ms. Evans' disability, race, or national origin characteristics, or their engagement in protected activity, more favorably.

40. Ms. Evans then made another internal appeal based on Professor Robinson's bias against her protected characteristics.

41. Regis did not investigate any of Ms. Evans' allegations, including race or national origin discrimination, disability discrimination, or violations of Regis policy. The decision not to investigate was discriminatory and retaliatory.

42. On December 9, 2021, Ms. Evans with the support of a letter from her personal clinical psychologist, Dr. David Shapiro, requested a 3-day extension to take the critical December 12, 2021 online Final Examination for Professor Michel's class. Her request was a request for an additional accommodation for her disability.

43. The Regis Office of Accessibility Services acknowledged receipt of the extension request on Friday, December 10, but did not respond until one day *after* the scheduled final exam on Sunday, December 12.

44. Although Regis granted the extension, because of the late notice Ms. Evans was compelled to take the Final Examination without any accommodation. The delay by Regis was discriminatory and retaliatory.

45. Ms. Evans had technical difficulties accessing the Final Examination that Sunday, December 12, so she had to call the Online 24-hour Helpdesk. Regis' AI proctor automatically flags all calls to the Helpdesk as an attempt to "cheat."

46. Professor Michel then unilaterally overruled the Regis Office of Accessibility Services' grant of the 3-day extension accommodation, failed Ms. Evans on the Final Examination, and accused Ms. Evans of an "academic integrity" violation for calling the Helpdesk. Overruling

the extension, accusing Ms. Evans of academic integrity violations, and failing Ms. Evans was based on Ms. Evans' disability, national origin, and race and/or retaliation for Ms. Evans' complaints about discrimination.

47. Ms. Evans appealed these actions internally.

48. On March 18, 2022, Ms. Evans requested accommodations for future examinations, because the situation with Professor Michel's examination and the hostile educational environment had exacerbated her conditions.

49. Ms. Evans requested the ability to access a human proctor, selected or designated by Regis, and ***paid for by Ms. Evans***, to supplement -- not replace --  Regis' AI proctor.

50. Regis did not engage with Ms. Evans regarding her March 18, 2022 accommodation requests.  The failure to engage in the interactive process violates the ADA and Rehabilitation Act.  Regis denied Ms. Evans' accommodation requests without doing any engagement, based in part on false premises.

51. Regis Provost and Vice President of Academic Affairs, Dr. Mary Driscoll ("Dr. Driscoll") issued an appeal determination on March 24, 2022--  6 days after Regis received Ms. Evans' March 18, 2022 requests for additional accommodations.

52. Dr. Driscoll acknowledged that the "committee determined that the [Respondus Lockdown] video evidence cited by the instructor [Professor Michel] as demonstrating improper behavior during the retake of Exam 2 on October 31-November 1, 2021 was ultimately inconclusive," and that the academic integrity violation alleged during the December 12, 2021 Final Examination was "open to question."

53. Dr. Driscoll only allowed recalculation of Ms. Evans' grade based on the 2 out of 100 Final Examination questions Ms. Evans was able to access. Obviously, Dr. Driscoll's decision still resulted in a "Fail" grade for Ms. Evans. The decision was discriminatory and retaliatory.

54. Ms. Evans asked Dr. Driscoll to reconsider her decision and requested to take a subject matter assessment/test which was equivalent to the Final Examination content. The Course NU664B Syllabus provides such "retake" opportunities in the event of online technical difficulties such as those experienced by Ms. Evans.

55. Regis denied Ms. Evans' retake request. As a result, Ms. Evans received a "Fail" grade on her Final Examination and failed *Primary Care of Family I* (NU-664B-03). The decision was discriminatory and retaliatory.

56. Professor Robinson also deleted 340.5 earned virtual clinical hours Ms. Evans had earned during the Fall 2021 Semester, for the separate *clinical* course, "Clinical Seminar: Virtual (NU-664BX-02)."

57. Professor Robinson claimed that a student who failed the didactic portion of the course would lose their clinical hours, and they would no longer count for credit. This claim is false. Professor Robinson did not delete all the clinical hours of graduate nursing students who do not have disabilities, engage in protected activity, and/or who are not Asian/Pacific Islanders and who received "Fail" grades in the "didactic portion" of the class.

58. Regis' false cheating accusations, failing Ms. Evans because of her disabilities, and retaliating against her further exacerbated Ms. Evans' PTSD.

59. On May 11, 2022, after Ms. Evans complained of that unequal treatment, the Associate Dean, Dr. Godzik, acknowledged in another context that students were able to keep 100

clinical hours in Ms. Evans' class, despite failing the didactic course. However, Dr. Godzik failed to take any action to remedy the discrimination and retaliation.

60. Ms. Evans appealed the decision to eliminate her earned clinical hours with Dr. Godzik on or around April 19, 2022. She based her appeal on Professor Robinson's "repeatedly hostile, discriminatory, and retaliatory" behavior toward her and questioned how Professor Robinson "can continue to be allowed to render decisions regarding [her] situation."

61. Dr. Godzik denied the appeal and referred Ms. Evans back to Professor Robinson.

62. Regis allowed repeated discriminatory and retaliatory conduct towards Ms. Evans and refused to investigate Ms. Evans' allegations of repeated discrimination and retaliation against Ms. Evans as a person with a disability and of Asian/Pacific Islander national origin.

63. On April 25, 2022, Ms. Evans filed a Complaint of Discrimination with the Boston, Massachusetts office of the United States Department of Education's Office for Civil Rights ("OCR"), alleging that Regis discriminated, harassed, and retaliated against Ms. Evans for engaging in protected activity, based on her disability/disability accommodations, and/or her Asian/Pacific Islander national origin.

64. On May 12, 2022, Ms. Evans filed with Regis a "Notice of Discrimination," requesting various forms of immediate relief to alleviate the discrimination/retaliation, none of which Regis thereafter provided.

65. Two weeks after her latest request for accommodation, on June 2, 2022, Regis again falsely accused and then disciplined Ms. Evans. Regis claimed that Ms. Evans had violated the classroom code of conduct by engaging in "non-professional conduct, bullying, and intimidation toward professors and classmates." The accusation was false. Ms. Evans never

saw the report of the alleged violation nor was she ever able to view the Zoom session recording when the behavior allegedly took place.

66. Ms. Evans had asked why she did not get notice from Professor Koransky-Matson regarding a review session that other students were aware of. No other students making comparable comments were disciplined by Regis, including at least one known Caucasian/non-disabled student. The warning was pretext and retaliation against Ms. Evans for engaging in protected activity.

67. Prior to this May 30, 2022 incident, Professor Robinson involuntarily transferred Ms. Evans from Professor Jacqueline Lagasse's class to Professor Koransky-Matson's class for NU665B - *Primary Care of the Family II*, despite the fact that following that transfer, there were still at least 6 open seats in Professor Lagasse's class. Ms. Evans had originally selected Professor Lagasse because she had no prior history or involvement in the harassment/discrimination/retaliation issues that Ms. Evans had been experiencing. Whereas Professor Koransky-Matson had perpetuated the hostile educational environment Ms. Evans was already experiencing.

68. Of all students initially enrolled in a class with Professor Lagasse, Professor Robinson unilaterally and involuntarily transferred *only* Ms. Evans out of Professor Lagasse's class, and into Professor Koransky-Matson's class, for NU665B - *Primary Care of the Family II*.

69. Professor Robinson also involuntarily transferred Ms. Evans from Professor Eleonara Azenstein's class, NU-665BX (clinical), to Professor Gordon's class, despite the fact that following that transfer, at least 1 open seat remained in Professor Azenstein's class. Similarly, Ms. Evans had originally selected Professor Azenstein because she had no prior

history or involvement in the harassment/discrimination/retaliation issues that Ms. Evans had been experiencing.

70. Ms. Evans complained to Dr. Godzik about these two transfers and requested that the transfers be reversed. Dr. Godzik ratified Professor Robinson's decision and did not take any further action.

71. Also further indicating that Ms. Evans' alleged violations are pretextual, Professor Koransky-Matson, during a recorded classroom meeting, openly referred to a non-disabled Caucasian student, "Melissa," as her "favorite" student and then allowed that Caucasian student, "Melissa," to violate Regis "respect" protocols and openly address Professor Koransky-Matson by her first name, with no resulting disciplinary / misconduct consequences imposed.

72. Twelve days following the May 30, 2022 warning for "bullying and intimidation," Regis disciplined Ms. Evans yet again on June 12, 2022 for alleged "Academic Integrity" violations, in clinical course NU665BX06. Dr. Jean Gordon, copying Dr. Robinson, alleged that Ms. Evans had "attended clinical without proper faculty notification and communication" and that she was dishonest about her clinical hours.

73. Dr. Gordon's allegations were not true. Ms. Evans notified her Regis "clinical faculty" in Massachusetts--and Regis' Clinical Placement Coordinator and its Clinical Operations Assistant Director both approved --that her onsite supervisor ("Preceptor") was Ms. Lynne Prouhet, at the Colorado Springs VA Clinic *on April 25, 2022.*

74. Regis never attempted to ascertain the actual facts from the responsible Preceptor at the VA Clinic in Colorado Springs, Colorado who had sole first-hand knowledge as to Ms. Evans'

actual activities at that clinic. Instead, Regis unilaterally deleted all of Ms. Evans' clinical hours with Preceptor Lynne Prouhet.

75. On June 24, 2022, Dr. Gordon affirmed the Academic Integrity violation allegation, and issued the severest sanction, a "failure" grade in NU-665BX, again resulting in Ms. Evans "failing" both the clinical course and the didactic course..

76. Regis CORE ELMS Coordinator Andrew Ferolito informed Ms. Evans that students' clinical hours should never be deleted before the semester ends, because the grades are not even official yet.

77. Regis refused to provide Ms. Evans with the underlying "CORE ELMS" data on which Regis based its disciplinary action.

78. The accusation, failure to investigate, and failing grade continued the retaliation and discriminatory actions against Ms. Evans.

79. Ms. Evans appealed the failing grade in her NU-665BX course. Regis deleted 51 of Ms. Evans' clinical hours in NU-665BX, without awaiting the outcome of Ms. Evans' pending June 2022 Academic Appeal.

80. Regis then placed Ms. Evans' pending Academic Appeal "on hold," claiming it was because of Ms. Evans' filing of her OCR complaint in April 2022. The rationale is pretext. Regis put Ms. Evans' internal appeal on hold in order to be able to continue to retaliate and discriminate against her by assigning her another failing grade.

81. On August 27, 2022, Regis terminated Ms. Evans from the program. Expelling her from the nursing program was discriminatory and retaliatory.

82. Although Regis claimed Ms. Evans could contact her Academic Advisor about her expulsion, when she tried, Regis forbade her. Barring Ms. Evans from her academic advisor was further retaliation.

83. By suspending Ms. Evans' Academic Appeal and expelling her from the graduate nursing program based on the subject of her appeal, Regis discriminated and retaliated against Ms. Evans.

84. On August 27, 2022, Ms. Evans was engaging in good faith in OCR-facilitated mediation with Regis to resolve her complaint of discrimination and continuing her program participation.

85. Ms. Evans then filed an "Academic Standing Appeal," on September 8, 2022. Regis ignored her appeal.

86. Ms. Evans attempted to enroll in a course called NU-667BX Clinical Continuation for the Fall 2022 Semester. Regis prohibited it.

87. Regis allowed three other Regis nursing students, none of whom engaged in any known protected activity and who had two "failure" grades, to remain in the nursing program, and to take the clinical class Ms. Evans sought to take in the fall 2022 semester. Its prohibition on Ms. Evans taking the class was retaliation for her asserting discrimination.

88. In October 2022, Regis deleted several of the parts of its Student Clinical Manual provisions that it used to terminate Ms. Evans from the program. The deletion of these parts illustrates that Regis knew that they were problematic at the time it used them against Ms. Evans and illustrates that its actions against her were pretextual, and the real reasons were retaliation and discrimination.

89. Ms. Evans was unable to fully participate in her studies and academic programming because of burdens which Regis imposed on her because of her disability, national origin, and/or engaging in protected activity.

90. Regis subjected Ms. Evans to discrimination, a hostile educational environment, and/or retaliation based on her disability, her race/national origin, and/or her engagement in protected activity. Its actions illustrate its deliberate indifference to a severe, pervasive, and objectively offensive educational environment to which Ms. Evans was subjected.

91. Due to Regis' discrimination and retaliation and failure to provide her with reasonable accommodations, Ms. Evans was unable to graduate from Regis' graduate nursing program and thereafter find appropriate employment consistent with graduate nursing credentials in her chosen profession.

92. Because of Regis' discrimination and retaliation, Ms. Evans had to enroll at another institution, Walden University, which did not accept the majority of credits Ms. Evans from Regis. Thus, Regis delayed the completion of Ms. Evans' education; forced her to incur additional costs and expenses; and delayed her ability to earn an income consistent with graduate nursing credentials.

93. The Regis Office of Accessibility Services which exists to support students with disabilities, failed to support Ms. Evans and allowed Regis to discriminate against her and undermine her accommodations.

94. Regis represented that it would offer students with disabilities and veterans services and supports through its Office of Accessibility Services and Center for Veteran and Military Family Services offices.

95. Ms. Evans enrolled a Regis relying upon those promises.  She did not receive support from Regis' Center for Veteran and Military Family Services or from the Office of Accessibility Services.

96. Regis' policies and handbooks, including its Office of Accessibility Services Policies and Nursing Curriculum Plan, and its grievance, Inclusive Excellence, and anti-discrimination policies, are contracts between Regis and its students, and Regis promised and was contractually obligated to follow those policies.

97. Ms. Evans reasonably relied on Regis' promises and published representations, and Regis actually implementing and following its own policies.

98. Ms. Evans accepted those contracts through enrolling and paying tuition and other costs to Regis.

99. Regis obstructed and impaired Ms. Evans' ability and right to make and enforce her contracts with Regis, and did so intentionally and on the basis of Ms. Evans' race/national origin, and/or on the basis of Ms. Evans' engagement in protected activity related to her race/national origin.

100.   Regis' treated Ms. Evans in a disparate manner, via Regis' above-referenced actions and inactions, based on her disability conditions, her need for accommodations,  her race/national origin, and/or in retaliation for her engagement in protected activity.

## COUNT I

### Violation of §504 of the Rehabilitation Act of 1973, 29 U.S.C.A. §794

The actions of Regis as set forth above, and incorporated by reference herein, constitute disability discrimination, retaliation, and failure to provide reasonable accommodations as a violation of §504 of the Rehabilitation Act of 1973.

## COUNT II

**Violation of Title III of the Americans with Disabilities Act, 42 U.S.C.A. §12101 *et seq.***

The actions of Regis as set forth above, and incorporated by reference herein, constitute disability discrimination, retaliation, and failure to provide reasonable accommodations as a violation of Title III of the ADA.

## COUNT III

**Violation of the Civil Rights Act of 1866, 42 U.S.C.A. §1981**

The actions of Regis as set forth above, and incorporated by reference herein, constitute a violation of Ms. Evans right to make and enforce contracts pursuant to the Civil Rights Act of 1866, 42 U.S.C.A. §1981, and an impairment of Ms. Evans right, pursuant to 42 U.S.C.A. §1981(c). The actions of Regis as set forth above, and incorporated by reference herein, constitute discrimination and retaliation under Section 1981 of the Civil Rights Act of 1866.

## COUNT IV

**Breach of Contract**

The actions of Regis as set forth above, and incorporated by reference herein, constitute a breach of contract under Massachusetts common law.

## COUNT V

**Promissory Estoppel**

The actions of Regis as set forth above, and incorporated by reference herein, induced Ms. Evans to rely on its promise of a safe, non-discriminatory learning environment and caused her damages for which it is responsible.

**PRAYER FOR RELIEF**

WHEREFORE, Ms. Evans demands judgment in her favor on all counts and respectfully requests that this Honorable Court order the following relief:

1. Order Regis to pay all applicable damages to Ms. Evans provided for all statutory and common law violations, including, to the extent permitted by law, for:

    a. Ms. Evans' injuries including emotional distress, loss of academic opportunity, excess tuition/fees that she will incur because of lost time and credits from the graduate nursing program and unreimbursed out-of-pocket expenses incurred in response to these circumstances;

    b. Exemplary or Punitive damages;

    c. Economic damages including lost/foregone wages;

    d. Statutory interest;

    e. Attorney's fees and costs;

    f. Equitable and/or injunctive relief including:

        i. Order Regis to exclude Ms. Evans' "fail" grades/zero credit grades from her academic records and GPA calculation, restore all previously invalidated credits/clinical hours, and otherwise remove any derogatory/disparaging content and purported findings of academic integrity violations from any of Ms. Evans' records maintained at Regis; and

        ii. Order Regis to take effective steps to prevent disability-based and race/national origin-based discrimination, harassment, and retaliation, in its education programs, including, but not limited to: by prohibiting

        predetermination and sanction imposition based on AI proctor "flagging," absent consideration of students' disabilities/disability accommodations, and prior to providing full due process; and by equitably, impartially, and fully investigating such discrimination, harassment, and retaliation allegations, and appropriately responding to all such conduct, and mitigating effects of such conduct and any hostile educational environment that may arise from and contribute to it; and

2. Award any other relief the Court deems just and proper.

## JURY DEMAND

Ms. Evans requests a trial by jury on all counts so triable.

Dated: December 10, 2024

        Respectfully submitted,
        REMEDIOS EVANS
        By her attorneys,

        Rebecca G. Pontikes, BBO # 637157
        Bryn Sfetsios, BBO # 688368
        PONTIKES LAW, LLC
        10 Tremont St., Suite 207
        Boston, MA 02108
        (617) 357-1888
        rpontikes@pontikeslawllc.com
        bsfetsios@pontikeslawllc.com